Willie Dorrell Minor was convicted of the capital offense of "Murder when the victim is less than fourteen years of age," Ala. Code 1975, § 13A-5-40(15), for the death of his two-month old son, Ebious Jennings. The jury, by a vote of 12 to 0, recommended that Minor be sentenced to death. The trial court held a sentencing hearing and entered an order sentencing Minor to death. The Court of Criminal Appeals affirmed Minor's conviction and *Page 798 
sentence. Minor v. State, 780 So.2d 707 (Ala.Crim.App. 1999). We reverse and remand.
 Facts
The evidence at trial tended to show that Ebious died as the result of being severely beaten and shaken, and it also tended to show the following facts: On the night of April 15, 1995, Ebious's mother, Lakeisha Jennings, left Ebious and her two other children in Minor's care, in the apartment Lakeisha and Minor shared. Lakeisha left the apartment at approximately 9:35 to 9:40 p.m. to go to her mother's apartment, where she arrived approximately five minutes later. Lakeisha walked to a nearby store at about 10:00 p.m. and then walked back to her mother's apartment, where she stayed approximately 5 to 10 minutes. Lakeisha then walked home, the walk taking her another five minutes. Lakeisha testified that when she returned to the apartment, Ebious was lying on the bed; that Minor walked into the bedroom and picked Ebious up; and that Ebious was nonresponsive. At 10:55 p.m., Lakeisha telephoned her mother, Diana Pitts, who came over and drove Lakeisha, Minor, and Ebious to a hospital.
Lakeisha testified that, in her haste to leave for the hospital, she hit her arm on the door frame. Lakeisha denied that she hit Ebious's head on the door frame, but admitted that Ebious had previously fallen off the couch in the apartment. Lakeisha also testified that they had to wait for Minor to get in the car to go to the hospital; that they repeatedly sounded the horn in an attempt to hurry him; and that they had almost left without him. Lakeisha's sister, Latia Pitts, accompanied their mother to the apartment after Lakeisha called. Latia testified that she saw Lakeisha with Ebious in her right arm and that Lakeisha hit her left arm on the wall and did not hit Ebious's head on the door frame as they were leaving.
Dr. Elizabeth Cockrum, a pediatrician at DCH Regional Medical Center ("DCH"), testified that she had examined Ebious when he was two hours old and had performed a discharge examination two days after Ebious was born. Both examinations showed Ebious to be a healthy baby. Linda McGarroh, a registered nurse with the Tuscaloosa County Health Department, testified that she had performed a two-week checkup on Ebious and had found him to be a normal baby. Donna Richardson, another registered nurse with the Tuscaloosa County Health Department, testified that she had examined Ebious for his two-month checkup on April 12, 1995, three days before his death. At that time, Richardson determined that Ebious was fine.
Dr. Steve Lovelady, an emergency-medicine physician at DCH, examined Ebious on the night of April 15, 1995. He testified that the examination of Ebious indicated bleeding in the retina; this bleeding, he said, was a sign that Ebious had been violently shaken. Dr. Lovelady testified that Ebious's injuries constituted the most severe case of shaken-baby syndrome he had ever seen. Ebious also had multiple rib fractures and at least two skull fractures. Dr. Lovelady testified that the severity of Ebious's injuries was magnified by the fact that an infant's bones are more bendable than those of adults and, therefore, are harder to break. Ebious also had internal bleeding. Dr. Lovelady testified that Ebious's injuries were too severe to have been caused by a fall from a sofa. Dr. Ashley Evans, a pediatrician on the staff at DCH, also testified regarding Ebious's injuries and demonstrated on a doll the amount of force needed to inflict the kind of injury involved in shaken-baby syndrome. Dr. Evans testified that Ebious suffered, at a minimum, three traumatic events, including severe shaking, a blow or blows to the head, and a blow or blows to the abdomen.
Dr. Kenneth Warner, a physician with the Alabama Department of Forensic Sciences, performed the autopsy on Ebious. Dr. Warner testified that Ebious had 12 recently fractured ribs, internal bleeding caused by a torn liver and a torn spleen, *Page 799 
skull fractures, and trauma to the scrotum area. Dr. Warner indicated that the cause of Ebious's death was blunt-force trauma to the head and chest, in addition to the brain damage caused by shaking. He also testified regarding the amount of force necessary to cause the kind of fractures suffered by Ebious, stating that "it takes a tremendous amount of force to break a child's skull because a kid's skull will just give." Dr. Warner also demonstrated on a doll the amount of force needed to inflict the kind of injury caused by shaken-baby syndrome.
Minor testified on his own behalf and admitted that on the day of Ebious's death he had smoked marijuana and had consumed several beers. Minor stated that when Lakeisha returned to the apartment she went into the bedroom where Ebious was and that Lakeisha and Ebious were alone for about 15 minutes. Minor testified that he heard Ebious crying and that when he went into the bedroom Lakeisha was changing Ebious's diaper. Minor testified that Lakeisha told him that Ebious was crying because he was sore from falling off the couch earlier that evening. Minor stated that he picked Ebious up; that he was not then breathing; but that when he laid Ebious down he felt a heartbeat and believed Ebious was okay. Minor testified that he was not in a hurry to get to the car to go to the hospital because he did not believe Ebious was seriously injured. Minor maintained that he did not kill Ebious and that he did not strike Ebious in any way. Minor stated that Lakeisha admitted during a telephone conversation with him that she had considered it her fault that Ebious had died because she believed his injuries were the result of falling off the couch. Minor also testified that he saw Ebious hit the door of the apartment as Lakeisha was leaving with him to go to the hospital. Minor admitted that he had prior convictions for assault in the second degree, for possession of cocaine, and for rape in the second degree. Minor also admitted that he had escaped from the county jail while he was awaiting trial on the capital-murder charge.
During cross-examination, Minor admitted that he had given several inconsistent statements to law-enforcement officers. Minor testified that, although he did nothing intentionally or accidentally to cause Ebious's death, he had made up a story about an accident in order to get released on bond. Minor also testified that he made these inconsistent statements in an effort to protect Lakeisha.
 Discussion
Minor contends that the trial court committed reversible error in failing to properly instruct the jury regarding his prior convictions — 1) that it could consider the evidence of Minor's prior convictions only for impeachment purposes and 2) that it could not consider the prior convictions as substantive evidence of Minor's guilt. Minor did not at trial request a limiting instruction regarding the evidence of his prior convictions and did not at trial object to the court's failure to give such an instruction. However, this Court's review of a death-penalty case allows us to address any plain error or defect found in the proceeding under review, even if the error was not brought to the attention of the trial court. Rule 39(a)(2)(D) and (k), Ala.R.App.P.[1] "`"Plain error" only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.'" Ex parteWomack, 435 So.2d 766, 769 (Ala.), cert. denied, Womack v.Alabama, 464 U.S. 986 (1983), quoting United States v. Chaney,662 F.2d 1148, 1152 (5th Cir. 1981). The plain-error standard applies only where a particularly egregious error occurs at trial. Exparte Harrell, 470 So.2d 1309, 1313 (Ala.), cert. denied,474 U.S. 935 (1985). When the error "has or probably has" substantially prejudiced the defendant, this Court may *Page 800 
take appropriate action. Rule 39(a)(2)(D) and (k), Ala.R.App.P.; Exparte Henderson, 583 So.2d 305, 306 (Ala. 1991), cert. denied,Henderson v. Alabama, 503 U.S. 908 (1992). Even under the stringent standards applicable to plain-error review, we conclude that the failure to properly instruct the jury in a capital-murder case as to the proper use of evidence regarding prior convictions constitutes reversible error. When a defendant testifies at trial, the State is entitled to impeach the defendant's credibility by introducing evidence of prior convictions. See Rule 609(a)(1)(B), Ala. R. Evid. In considering the admissibility of prior convictions for impeachment purposes, this Court has stated:
 "The high probability of prejudice against a defendant makes the admissibility of his previous criminal convictions a controversial issue.
 "This notion of prejudice has been said to encompass two tendencies of juries: 1) The tendency to convict not because the defendant is guilty of the charged offense, but because evidence introduced shows he is a bad person who should be incarcerated regardless of his present guilt, and 2) the tendency to infer that, because the defendant committed a prior crime, he committed the crime charged. Thus, a defendant wishing to testify in his own behalf faces this dilemma: Testify and run the risk of greatly prejudicing his defense by introduction of prior convictions to impeach, or refrain from testifying and damage his defense by not telling his side of the story.
 "The rationale for admitting impeachment evidence when a defendant, or any other witness, testifies is that certain evidence of prior criminal acts and general character relates to a person's propensity to lie; therefore, the jury should have and use this evidence, but only for the limited purpose of evaluating the witness's veracity."
McIntosh v. State, 443 So.2d 1283, 1285 (Ala. 1983). (Citations omitted.) The law in Alabama is clear that "evidence of prior criminal convictions for impeachment purposes may not be considered or taken into account in determining a defendant's guilt of the offense for which he is prosecuted." King v. State,521 So.2d 1360, 1361 (Ala.Crim.App. 1987) (quoting 81 Am. Jur. 2d Witnesses § 569 at 575 (1976)). It is well settled that when prior convictions are introduced for impeachment purposes the defendant is entitled, upon request, to have the jury instructed that those prior convictions cannot be considered as substantive evidence of guilt of the crime charged. King, supra. The issue in the present case is whether, absent a request or an objection by the defendant, the trial court has a duty to instruct the jury that evidence of prior convictions is not to be considered as substantive evidence of guilt. We hold that the trial court does have such a duty in a capital-murder case.
Minor testified on direct examination that he had had prior convictions for assault in the second degree, for possession of cocaine, and for rape in the second degree. The Court of Criminal Appeals stated that the evidence of Minor's prior convictions was not admitted for impeachment purposes because it was elicited by Minor's counsel on direct examination. Minor v. State, 780 So.2d at 777. We disagree.
There is no consensus among the jurisdictions as to the proper treatment of a defendant's direct testimony admitting prior convictions. In State v. Smalls, 260 S.C. 44, 194 S.E.2d 188
(1973), upon direct examination, defense counsel elicited from the defendant the fact that he previously had been convicted of the crimes of robbery, grand larceny, and housebreaking. The Supreme Court of South Carolina stated: "When appellant testified, evidence of his prior convictions became admissible solely on the issue of his credibility as a *Page 801 
witness." 260 S.C. at 47, 194 S.E.2d at 189. Thus, the court concluded, the fact that the defendant first testified as to his prior convictions did not preclude his right to have the trial court limit the jury's consideration of his testimony to the issue of credibility. Similarly, in United States v. Diaz,585 F.2d 116 (5th Cir. 1978), the fact that the defendant testified on direct examination that he had two prior convictions did not preclude the necessity that the trial court instruct the jury that the evidence of prior convictions was to be considered only for a limited purpose. In Commonwealth v. Hurley,32 Mass. App. Ct. 620, 592 N.E.2d 1346 (1992), the court considered the argument that a defendant who elects to introduce evidence of his prior convictions is not entitled to a limiting instruction because the evidence has not been introduced for impeachment purposes. That court concluded: "Realistically, the defense puts in the evidence only because the prosecution will do so otherwise; the basis for admissibility is the same." 32 Mass. App. Ct. at 622, 592 N.E.2d at 1347.
The New Hampshire Supreme Court has held differently. That court has held that a trial court must provide a limiting instruction when evidence of prior convictions is introduced to impeach a defendant's credibility, unless such an instruction is specifically waived by the defendant, but that this rule does not apply when the defendant's prior convictions are admitted during the defendant's direct testimony. State v. Cassell, 140 N.H. 317,666 A.2d 953 (1995). The Court of Criminal Appeals relied onCassell in concluding that Minor's failure to request a limiting instruction could be viewed as a trial tactic used in order to prevent calling further attention to Minor's convictions through an instruction to the jury.
However, to hold that the evidence of Minor's prior convictions was not offered for impeachment purposes would indicate that it was admissible for another purpose, and it was not. Minor's introduction, on direct examination, of evidence regarding his prior convictions was a trial tactic that does not change the purpose for which the evidence was admitted. Minor introduced evidence of these convictions in anticipation that otherwise it would be brought out by the prosecution; his introduction of it does not waive his right to have the jury instructed as to the proper use of it.
This Court has never addressed the question whether a trial court has a duty to sua sponte instruct the jury as to the limited purpose for which it may consider evidence of prior convictions. The Court of Criminal Appeals has held that the trial court does not have a duty, sua sponte, to inform the jury that evidence of inconsistent statements may be considered only for the purpose of impeaching a witness's credibility. Varner v. State,497 So.2d 1135 (Ala.Crim.App. 1986); Weaver v. State, 466 So.2d 1037
(Ala.Crim.App. 1985). However, Varner and Weaver were not capital cases, and the doctrine of plain-error review did not apply. In addition, those cases do not contain any holding or analysis with respect to impeachment by prior convictions. The Court of Criminal Appeals held in Pardue v. State, 571 So.2d 320,327 (Ala.Crim.App. 1989), rev'd on other grounds, 571 So.2d 333
(Ala. 1990), that defense counsel's failure to request a limiting instruction or to object to the trial court's failure to instruct the jury regarding the defendant's prior convictions waived the issue for review. However, Pardue was not a capital case, and the doctrine of plain-error review did not apply.
The State argues that the trial court was not required to give the jury a limiting instruction, absent a request by Minor, citing Charles W. Gamble, McElroy's Alabama Evidence, § 165.01(2) (5th ed. 1996):
 "Once the accused has been impeached by one of the permissible impeachment forms, the defense may want to take steps to minimize or offset the *Page 802 
impact of the impeachment. The accused is entitled to have the jury instructed that such evidence is to be considered only as affecting the accused's credibility as a witness and not as tending to show guilt. The court is not required to give such an instruction unless the accused requests that it be given."
However, this Court has acknowledged the inherently prejudicial nature of evidence of a defendant's prior convictions.Cofer v. State, 440 So.2d 1121, 1124 (Ala. 1983) [e]vidence of prior bad acts of a criminal defendant is presumptively prejudicial to the defendant. "The general exclusionary rule bars the state from introducing evidence of an accused's prior criminal acts for the sole purpose of proving the propensity of the accused to commit the charged offense." Hobbs v. State,669 So.2d 1030, 1032 (Ala.Crim.App. 1995). Thus, evidence of prior convictions is admissible only for limited purposes. "The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors."Cofer, 440 So.2d at 1123 (quoting Charles W. Gamble, McElroy'sAlabama Evidence § 69.01 (3d ed. 1977)). The general exclusionary rule "protects the defendant's right to a fair trial" by seeking "`to prevent conviction based on a jury belief that [the] accused is a person of bad character. The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged.'" Cofer, 440 So.2d at 1123 (citation omitted). Thus, it naturally follows that the trial court should take all necessary precautions to ensure that when evidence of a defendant's prior convictions is admitted into evidence, the jury is properly instructed on the purpose for which it may consider that evidence. This includes instructing the jury, sua sponte, that it may not consider the evidence of prior convictions as substantive evidence that the defendant committed the charged offense.
Our holding today is in line with that of other jurisdictions that have addressed this issue. In State v. Brown, 296 S.C. 191,192-93, 371 S.E.2d 523, 524 (Sup.Ct. 1988), the Supreme Court of South Carolina stated: "This Court has repeatedly held the jury must be charged that evidence of prior convictions is admissible only for impeachment. In a capital case, failure to give this charge is error even absent a request." The Court of Criminals Appeals attempted to distinguish Brown on the basis that the defendant in Brown was told by the trial court before he testified that he would receive a limiting instruction and thus in testifying relied on what he had been told, whereas Minor was never told, before testifying, that the jury would be given a limiting instruction. We do not find this to be a valid distinction. Minor was entitled to have the jury instructed on the proper use of evidence regarding his prior convictions, regardless of whether the trial court informed him of that entitlement before he testified.
The United States Court of Appeals for the District of Columbia Circuit has held that in cases where evidence of other crimes by the defendant is introduced, not as substantive evidence, but solely as impeachment, "the trial court has a duty to see that the jury does not cross the boundary between credibility and substance in making its inferences from the prior act." The court stated that the trial court "must not only act sua sponte, whether or not request is made, but should give an appropriate instruction immediately before or after the impeachment evidence is submitted, to confine its effect before the evidence moves on to other matters." United States v.Bobbitt, 450 F.2d 685, 691 (D.C. Cir. 1971). Similarly, the Sixth Circuit has held, in a habitual-offender case, that the failure of the trial court to instruct the jury on the permissible uses of the evidence of previous convictions, even absent *Page 803 
a request, created a "possibility of egregious unfairness [that] was so great in the absence of a limiting instruction that the failure to give one constituted clear error." Evans v. Cowan,506 F.2d 1248, 1249 (6th Cir. 1974).
The Supreme Court of Mississippi has held that the trial court has a duty to instruct the jury sua sponte on the limited purpose of evidence of prior convictions, even in noncapital cases, when the prior conviction was for the same offense as the charged offense. See Robinson v. State, 735 So.2d 208 (Miss. 1999); Pugh v. State, 584 So.2d 781 (Miss. 1991) (following the holding in United States v. Diaz, 585 F.2d 116 (5th Cir. 1978)).See also United States v. Garcia, 530 F.2d 650, 656 (5th Cir. 1976) ("this Circuit obviously adheres to the rule that in certain circumstances the failure to give a [limiting] instruction amounts to plain error"). The Supreme Court of New Hampshire has held that the admission of evidence of prior convictions "absent an instruction limiting the use of this evidence to impeachment, is error unless the defendant specifically waives his right to such instruction on the record." State v. Skidmore, 138 N.H. 201, 202,636 A.2d 64, 65 (1993).
In the present case, the trial court gave this vague instruction on the use of impeachment evidence:
 "Now, evidence has been introduced in this case for the purpose of impeaching certain witnesses and discrediting their testimony.
 "The law allows witnesses to be impeached in any number of ways. For example, a witness may be impeached by proof of convictions of crimes involving moral turpitude or a witness may be impeached by contradictory statements made by the witness either on the stand while testifying or at other times and other places, whether under oath or not.
 "But the fact that a witness has been impeached and successfully impeached does not mean that you must necessarily disregard that witness' testimony, either in whole or in part, for there may be other facts and evidence or other testimony or other evidence that in your judgment may tend to corroborate either all or part of that witness' testimony. And as I have already told you, you are the sole and exclusive judges of the credibility of the witnesses and the weight that you will accord their testimony."
The trial court did not tell the jury that the evidence of Minor's prior convictions could not be considered as substantive evidence that he committed the crime charged. Because the jurors were not so instructed, they were free to consider the prior convictions for any purpose; thus, they could consider the probability that Minor committed the crime because he had demonstrated a prior criminal tendency. Allowing the jury to make such use of the evidence was highly prejudicial and constitutes reversible error.See Randolph v. State, 348 So.2d 858 (Ala.Crim.App. 1977) (conviction reversed because the trial court failed to adequately distinguish between impeachment evidence and substantive evidence).
The failure to instruct a jury in a capital-murder case as to the proper use of evidence of prior convictions is error, and that error meets the definition of "plain error." That failure is "so obvious that [an appellate court's] failure to notice it would seriously affect the fairness or integrity of the judicial proceedings." Womack, 435 So.2d at 769. The Court of Criminal Appeals determined that there was no plain error because the trial court could have "reasonably determined that . . . defense counsel had elicited Minor's admission of the prior convictions as part of trial strategy and did not want to call additional attention to the evidence through an instruction to the jury." 780 So.2d at 773. We disagree. Assuming the trial court did believe that the failure to request the instruction was a trial tactic, the trial court could have easily inquired as to whether defense counsel wanted the instruction given. *Page 804 
Considering the presumptively prejudicial nature of evidence of a defendant's prior convictions, we consider it incumbent on the trial court to ensure that the jury was instructed on the proper use of such evidence. We conclude that the failure of the trial court to instruct the jury that it could not use such evidence as substantive evidence of guilt "has or probably has" substantially prejudiced Minor; thus, it satisfies the plain-error standard. See Rule 39(a)(2)(D) and (k), Ala.R.App.P.
Furthermore, the prosecutor drew increased attention to Minor's prior convictions through his cross-examination.[2]
On cross-examination, Minor provided details concerning each of the prior convictions. He claimed that the second-degree assault charge was based on a shooting that was done in self-defense; that the second-degree rape charge was based on the statutory rape of a female who had lied about her age; and that the drug-possession charge was based on drugs that were not his. The prosecutor used these elaborations to argue that Minor failed to take responsibility for his actions. Specifically, after Minor testified that he had pleaded guilty to possession of a controlled substance but that the drugs were not his, the following colloquy occurred:
"[Prosecutor]: So that was not your drugs, either?
"[Minor]: No, it was not.
"[Prosecutor]: And you did not kill Ebious?
"[Minor]: No, I did not kill Ebious."
(R. 1259.) Thereafter, the prosecutor commented: "Actually, Mr. Minor, you have got an explanation for everything to minimize your responsibility, don't you?" Considering these statements in light of "1) [t]he tendency [of juries] to convict not because the defendant is guilty of the charged offense, but because evidence introduced shows he is a bad person who should be incarcerated regardless of his present guilt, and 2) the tendency [of juries] to infer that, because the defendant committed a prior crime, he committed the crime charged," McIntosh, 443 So.2d at 1285, we must conclude that the trial court's failure to instruct the jury that Minor's prior convictions could not be used for those purposes constitutes a particularly egregious error. Therefore, we reverse the judgment of the Court of Criminal Appeals and remand for that court to order a new trial.
REVERSED AND REMANDED.
Houston, Cook, Lyons, Brown, Johnstone, and England, JJ., concur.
Maddox and See, JJ., dissent.
[1] This citation to Rule 39 is a citation to that rule as amended effective May 19, 2000.
[2] In contrast, see Hurley, 32 Mass. App. Ct. at 622,592 N.E.2d at 1347, stating that when a defendant introduces his own prior convictions on direct examination and such "defensive use of the prior convictions succeeds in closing the matter," a limiting instruction might put more emphasis on that evidence. However, in that case, the prosecutor "did not rehash the prior convictions on cross-examination [or] mention them in his closing argument"; therefore, the court concluded, defense counsel might have reasoned "that it would be counterproductive to ask for a limiting instruction that would remind the jurors of the prior convictions."