The appellant, William A. Snyder, was convicted of three counts of capital murder for the killings of Nancy Burkhalter, Dixie Gaither, and Carey Milton Gaither. The murders were made capital because the appellant committed them during the course of a burglary. See § 13A-5-40(a)(4), Ala. Code 1975. He was also convicted of an additional count of capital murder, pursuant *Page 472 
to § 13A-5-40(a)(10), Ala. Code 1975, because he killed Dixie Gaither and Carey Milton Gaither by one act or pursuant to one scheme or course of conduct. After a sentencing hearing, the jury recommended, by a vote of 10-2, that the appellant be sentenced to death. The trial court accepted the jury's recommendation and sentenced the appellant to death. This appeal followed.
The trial court summarized the facts of the case as follows:
 "The Defendant, William A. Snyder, alias Corky Snyder, was indicted, tried and convicted of the following criminal offenses:
 "Count 1 — Murder by the Defendant during a Burglary in the First Degree in violation of Title 13A, Chapter 5, Section 40(a)(4) of the 1975 Code of Alabama, as amended, as it relates to the victim, Nancy Burkhalter.
 "Count 2 — Murder by the Defendant during a Burglary in the First Degree in violation of Title 13A, Chapter 5, Section 40(a)(4) of the 1975 Code of Alabama, as amended, as it relates to the victim, Dixie Gaither.
 "Count 3 — Murder by the Defendant during a Burglary in the First Degree in violation of Title 13A, Chapter 5, Section 40(a)(4) of the 1975 Code of Alabama, as amended, as it relates to the victim, Carey Milton Gaither.
 "Count 4 — Murder by the Defendant wherein two or more persons are murdered by the Defendant pursuant to one scheme or course of conduct in violation of Title 13A, Chapter 5, Section 40(a) ([10]) of the 1975 Code of Alabama, as amended.
 "The victims of the crimes, as aforesaid, were Nancy Burkhalter, Dixie Gaither and Carey Milton Gaither. Dixie Gaither was the mother of Carey Milton Gaither. Nancy Burkhalter and Carey Milton Gaither had a `boyfriend/girlfriend' relationship. Nancy Burkhalter was approximately 37 years of age; Carey Milton Gaither was approximately 45 years of age; and Dixie Gaither was approximately 72 years of age. Dixie Gaither was employed at a local McDonald's restaurant as a hostess/greeter. Due to the health condition of Carey Milton Gaither, he was not able to work. Nancy Burkhalter worked at the Cheaha State Park.
 "Based upon the evidence presented, this Court finds that the Defendant acted alone relative to the intentional killing of Nancy Burkhalter, Dixie Gaither, and Carey Milton Gaither. Therefore, this Court finds that there were no other participants, co-conspirators, or accomplices in the crimes.
 "On the 11th day of August, 1995, the victims resided in a rural area known as Stockdale in Talladega County, Alabama. The victims resided on a farm in two separate dwellings. Carey Milton Gaither and Nancy Burkhalter resided in one dwelling in close proximity to the dwelling occupied by Dixie Gaither. Carey Milton Gaither was in failing health and was recently discharged from the hospital. Carey Milton Gaither was actually utilizing both houses during this period of time due to his declining health.
 "The Defendant, William A. Snyder, alias Corky Snyder, was an acquaintance of all three victims. In fact, the Defendant performed services for Dixie Gaither, including cutting her grass in the area of her residence. Either on the date of the killings, or within one or two days prior thereto, the Defendant had been to the residence of Dixie Gaither and had cut a portion of her grass until the mower ran into the house and became inoperable. The Defendant left *Page 473 
the residence of Dixie Gaither and later became concerned about her and returned to the residence late one evening. Defendant claims to have found the bodies of Dixie Gaither and Carey Milton Gaither and claims that two masked persons committed the crime and put the stolen merchandise in his truck. The allegations and contentions of the Defendant were rejected by the jury and this Court believes from the evidence that the Defendant committed the offenses charged in the indictment.
 "Relative to the burglary of the residence of Dixie Gaither, there was evidence of a break in. Dixie Gaither and Carey Milton Gaither were brutally beaten by a blunt object on or about their head. The beating was a vicious beating and clearly caused their death. Dixie Gaither had a .38 pistol and, based on the theft of the .38 pistol, and the fact that it was later used to kill Nancy Burkhalter, it is this Court's finding that Dixie Gaither and Carey Milton Gaither were killed first and Nancy Burkhalter was subsequently killed by the Defendant with the use of the stolen .38 pistol. Nancy Burkhalter was killed at the separate residence in the bedroom by the use of the pistol.
 "The bodies of Dixie Gaither, Carey Milton Gaither, and Nancy Burkhalter were not initially discovered. Dixie Gaither did not report on a timely basis to work at McDonald's. Her supervisor and the manager, David Cravens, went to the residence of Dixie Gaither as a result of his friend, Dixie Gaither, not timely reporting to work. He observed the damaged door and immediately utilized the telephone in his car to contact the Talladega Police Department. The Talladega Police Department came to the scene and discovered the bodies of Dixie Gaither and Carey Milton Gaither. Subsequent to that discovery, the Talladega Police Department investigated the other dwelling and found the body of Nancy Burkhalter.
 "Numerous witnesses testified as to the identity of jewelry and other personal property of Dixie Gaither and one item of personal property of Carey Milton Gaither. A men's ring, belonging to Carey Milton Gaither, was identified in court.
 "The following is some of the property identified in court that belonged to Dixie Gaither: one necklace, one chain, one bracelet, five rings, one band, purse, some personal effects in the purse, and charms. Relative to the investigation of the Defendant, the police ultimately obtained a search warrant for the dwelling of the Defendant. The police found in the dwelling of the Defendant an item of jewelry on a T.V. in the Defendant's residence that matched jewelry found from the purse of Dixie Gaither. In addition, shell casings were found behind the Defendant's house near a railroad track that were identified by an expert as having been fired in the .38 pistol that was identified as the property of Dixie Gaither. In a different location, some distance away from the house of the Defendant, the police recovered a shovel spade, the pistol that was identified as belonging to Dixie Gaither, two shoes and other evidence of the crime. The pistol, as aforesaid, was identified as Dixie Gaither's, and was shown by evidence that the projectiles that killed Nancy Burkhalter were fired from the .38 pistol. It was shown that the Defendant disposed of numerous items of evidence relating to the crime.
 "The Defendant disposed of additional property of Dixie Gaither in a dumpster several miles from his residence. The purse contained numerous items of property identified as that of Dixie *Page 474 
Gaither and there was at least one witness that identified the Defendant as having placed the purse in the dumpster. The purse contained jewelry that matched the jewelry confiscated from the Defendant's house.
 "Relative to the men's ring belonging to Carey Milton Gaither and the necklace, chain, bracelet, band and five rings belonging to Dixie Gaither, all of these items were taken by the Defendant and either sold or pawned to his uncle in the State of Georgia. The Defendant later attempted to get the jewelry back from his uncle as the investigation centered around him. He attempted to get the items back and was told that they had turned the items into a police department in Georgia. He demanded that they get the items back and get rid of them.
 "The Court charged the jury on the issue of flight and a person either obliterating, concealing or disposing of evidence of a crime. In this case, the Defendant clearly fled the scene of the crimes and made a concerted effort to dispose of all of the evidence of the crime in at least four to five separate locations. The Court finds that the flight and the concealment and disposing of the evidence was all from a consciousness of guilt.
 "The Defendant in this case weaved a web of deception by his actions at the scene and subsequent thereto. In fact, there would be no reason for the Defendant to take the shell casings out of the .38 revolver and place them in two separate locations if he were not the person that took the life of Nancy Burkhalter. The Defendant testified that he never went to the residence where Nancy Burkhalter was located, but he was disposing of evidence of that crime before the body was discovered by the authorities. In addition, he was making statements to people that the police were trying to pin the murders on him.
 "The jury heard a multitude of witnesses in this case and the Defendant's own testimony. Based upon the evidence, there is more than sufficient evidence to support the conviction of the Defendant for the murder of Nancy Burkhalter during a burglary in the first degree, the murder of Dixie Gaither during a burglary in the first degree, and the murder of Carey Milton Gaither during a burglary in the first degree. In addition, there is more than sufficient evidence to support the conviction of the Defendant for the murder of Dixie Gaither and Carey Milton Gaither pursuant to one scheme or course of conduct.
 "The murder of the victims, Nancy Burkhalter, Dixie Gaither, and Carey Milton Gaither were of the intentional killing type. The murder of Dixie Gaither and Carey Milton Gaither were clearly pursuant to one scheme or course of conduct and were of the intentional killing type. All of these murders were committed during a burglary in the first degree. The Defendant possessed all the requisite intent to sustain a conviction for the capital offenses charged in Counts One (1), Two (2), Three (3) and Four (4) of the indictment.
 "Since the law only requires a summary of the crimes, the Court believes that the foregoing findings should suffice and the Court will not go into any additional details of the facts leading up to the Defendant's conviction because the entire record will reflect all the facts. The evidence introduced during this proceeding that began on the 25th day of January, 2000 and concluded with the sentencing hearing on the 7th day of February, 2000, both direct and circumstantial evidence, overwhelmingly supported *Page 475 
the jury's verdict. The Defendant was the sole participant in the brutal murder and intentional murder of Nancy Burkhalter, Dixie Gaither, and Carey Milton Gaither in Talladega County, Alabama. The jury recommended death in this case and the Court has found by separate order that the aggravating circumstance outweighs the mitigating circumstance and that the appropriate punishment should be death by electrocution."
(C.R. 10-16.)
 I.
The appellant argues that the trial court did not adequately instruct the jury on the proper use of evidence that he had previously been convicted of second-degree theft of property.[1] He did not request a limiting instruction on the use of evidence about his prior conviction, and he did not object on this ground after the trial court had instructed the jury. However, Rule 45A, Ala. R.App. P., provides:
 "In all cases in which the death penalty has been imposed, the Court of Criminal Appeals shall notice any plain error or defect in the proceedings under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial right of the appellant."
Therefore, we review this contention for plain error.
The Alabama Supreme Court addressed a similar situation in Exparte Minor, 780 So.2d 796 (Ala. 2000), as follows:
 "The issue in the present case is whether, absent a request or an objection by the defendant, the trial court has a duty to instruct the jury that evidence of prior convictions is not to be considered as substantive evidence of guilt. We hold that the trial court does have such a duty in a capital-murder case.
 "Minor testified on direct examination that he had had prior convictions for assault in the second degree, for possession of cocaine, and for rape in the second degree. The Court of Criminal Appeals stated that the evidence of Minor's prior convictions was not admitted for impeachment purposes because it was elicited by Minor's counsel on direct examination. Minor v. State, 780 So.2d at 777. We disagree.
". . . .
 "However, to hold that the evidence of Minor's prior convictions was not offered for impeachment purposes would indicate that it was admissible for another purpose, and it was not. Minor's introduction, on direct examination, of evidence regarding his prior convictions was a trial tactic that does not change the purpose for which the evidence was admitted. Minor introduced evidence of these convictions in anticipation that otherwise it would be brought out by the prosecution; his introduction of it does not waive his right to have the jury instructed as to the proper use of it.
". . . .
 "The State argues that the trial court was not required to give the jury a limiting instruction, absent a request by Minor, citing Charles W. Gamble, McElroy's Alabama Evidence, § 165.01(2) (5th ed. 1996):
 "`Once the accused has been impeached by one of the permissible impeachment forms, the defense may want to take steps to minimize or offset the impact of the impeachment. *Page 476 
The accused is entitled to have the jury instructed that such evidence is to be considered only as affecting the accused's credibility as a witness and not as tending to show guilt. The court is not required to give such an instruction unless the accused requests that it be given.'
"However, this Court has acknowledged the inherently prejudicial nature of evidence of a defendant's prior convictions. Cofer v. State, 440 So.2d 1121, 1124 (Ala. 1983) (`Evidence of prior bad acts of a criminal defendant is presumptively prejudicial to the defendant'). `The general exclusionary rule bars the state from introducing evidence of an accused's prior criminal acts for the sole purpose of proving the propensity of the accused to commit the charged offense.' Hobbsv. State, 669 So.2d 1030, 1032 (Ala.Crim.App. 1995). Thus, evidence of prior convictions is admissible only for limited purposes. `The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors.' Cofer, 440 So.2d at 1123 (quoting Charles W. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977)). The general exclusionary rule `protects the defendant's right to a fair trial' by seeking `"to prevent conviction based on a jury belief that [the] accused is a person of bad character. The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged."'Cofer, 440 So.2d at 1123 (citation omitted). Thus, it naturally follows that the trial court should take all necessary precautions to ensure that when evidence of a defendant's prior convictions is admitted into evidence, the jury is properly instructed on the purpose for which it may consider that evidence. This includes instructing the jury, sua sponte, thatit may not consider the evidence of prior convictions assubstantive evidence that the defendant committed the chargedoffense.
". . . .
 "In the present case, the trial court gave this vague instruction on the use of impeachment evidence:
 "`Now, evidence has been introduced in this case for the purpose of impeaching certain witnesses and discrediting their testimony.
 "`The law allows witnesses to be impeached in any number of ways. For example, a witness may be impeached by proof of convictions of crimes involving moral turpitude or a witness may be impeached by contradictory statements made by the witness either on the stand while testifying or at other times and other places, whether under oath or not.
 "`But the fact that a witness has been impeached and successfully impeached does not mean that you must necessarily disregard that witness' testimony, either in whole or in part, for there may be other facts and evidence or other testimony or other evidence that in your judgment may tend to corroborate either all or part of that witness' testimony. And as I have already told you, you are the sole and exclusive judges of the credibility of the witnesses and the weight that you will accord their testimony.'
 "The trial court did not tell the jury that the evidence of Minor's prior convictions could not be considered as substantive evidence that he committed the crime charged. Because the jurors were not so instructed, they were free to consider *Page 477 the prior convictions for any purpose; thus, they could consider the probability that Minor committed the crime because he had demonstrated a prior criminal tendency. Allowing the jury to make such use of the evidence was highly prejudicial and constitutes reversible error. See Randolph v. State, 348 So.2d 858 (Ala.Crim.App. 1977) (conviction reversed because the trial court failed to adequately distinguish between impeachment evidence and substantive evidence).
 "The failure to instruct a jury in a capital-murder case as to the proper use of evidence of prior convictions is error, and that error meets the definition of `plain error.' That failure is `so obvious that [an appellate court's] failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.' Womack, 435 So.2d at 769. The Court of Criminal Appeals determined that there was no plain error because the trial court could have `reasonably determined that . . . defense counsel had elicited Minor's admission of the prior convictions as part of trial strategy and did not want to call additional attention to the evidence through an instruction to the jury.' 780 So.2d at 773. We disagree. Assuming the trial court did believe that the failure to request the instruction was a trial tactic, the trial court could have easily inquired as to whether defense counsel wanted the instruction given. Considering the presumptively prejudicial nature of evidence of a defendant's prior convictions, we consider it incumbent on the trial court to ensure that the jury was instructed on the proper use of such evidence. We conclude that the failure of the trial court to instruct the jury that it could not use such evidence as substantive evidence of guilt `has or probably has' substantially prejudiced Minor; thus, it satisfies the plain-error standard. See Rule 39(a)(2)(D) and (k), Ala. R.App. P."
780 So.2d at 800-04.
In this case, the trial court denied the appellant's motion in limine to prevent the State from introducing evidence about any of his prior convictions. Thereafter, the appellant testified on direct examination that he had been convicted of second-degree theft of property in 1988, and the State briefly questioned him about that conviction. The defense did not indicate at any time that it did not want the trial court to instruct on the proper use of prior convictions. In fact, when the State requested that the trial court give its "standard charge on evidence offered for impeachment purposes on prior conviction," the defense did not object. (R. 3248.) Subsequently, during its oral charge, the trial court instructed the jury as follows:
 "Now, there has been some testimony offered to the effect that a witness prior to taking the witness stand during this trial has been convicted of a crime. This testimony is allowed to go to you for one purpose, and that is for your consideration in determining what credibility you will give a witness' testimony from the witness stand in this case. This is for your consideration along with all the other factors in determining whether a witness is worthy of belief in what he says from the witness stand."
(R. 3511.) Like the trial court in Ex parte Minor, the trial court in this case did not specifically tell the jury that it could not consider the appellant's prior conviction as substantive evidence that he committed the capital offenses with which he was charged. Therefore, the jury could have concluded that the appellant committed the charged offenses because he had previously demonstrated a criminal tendency. *Page 478 
Based on the Alabama Supreme Court's reasoning in Ex parteMinor, we conclude that the trial court did not adequately instruct the jury on the proper use of the appellant's prior conviction, that that error constitutes plain error in this case, and that we must reverse the appellant's convictions based on this error.
The appellant raises several other issues that are potentially problematic. Because we must reverse on the jury instruction issue, we do not express a judgment on the remaining issues. "Our decision not to address [the merits of] the remaining issues raised by the appellant should not be construed as an approval of the manner in which the trial was conducted in regard to those issues." Fletcher v. State, 621 So.2d 1010, 1024 (Ala.Crim.App. 1993). Nevertheless, because some of the issues may arise again if the case is retried, we make the following observations and admonitions.
 II.
The appellant argues that the trial court improperly refused to allow him to introduce evidence that showed that another person committed the capital offenses. (Issue I in the appellant's brief to this court.) In refusing to admit the evidence, the trial court relied on this court's decision in Griffin v. State,790 So.2d 267 (Ala.Crim.App. 1999), opinion on return to remand,790 So.2d 350 (Ala.Crim.App. 2000). However, the Alabama Supreme Court reversed our decision in Ex parte Griffin, 790 So.2d 351
(Ala. 2000), and set forth a three-part test for determining whether such evidence is admissible. Should this issue arise on retrial, the trial court should apply the three-part test the Alabama Supreme Court set forth in Ex parte Griffin in determining the admissibility of such evidence.
 III.
The appellant also argues that the trial court improperly allowed the State to play, in their entirety, audiotapes of two statements his brother Butch had previously made to law enforcement officers. (Issue III in the appellant's brief to this court.) Should this issue arise on retrial, the trial court should evaluate the admissibility of such evidence under Rules 801(d)(1)(A) and 613(b), Ala. R. Evid. Rule 801(d), Ala. R. Evid., provides, in part:
 "Statements that are not hearsay. A statement is not hearsay if —
 "(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition. . . ."
(Emphasis added.) Rule 613(b), Ala. R. Evid., provides:
 "Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness has been confronted with the circumstances of the statement with sufficient particularity to enable the witness to identify the statement and is afforded an opportunity to admit or to deny having made it. This provision does not apply to admissions of a party opponent as defined in Rule 801(d)(2)."
(Emphasis added.)
 IV.
In a related issue, the appellant argues that the trial court improperly allowed the State to present evidence about his prior bad acts. (Issue II in the appellant's brief to this court.) Specifically, he contends *Page 479 
that, during one of Butch's statements that was played before the jury, Butch told the officers that the appellant had stolen some jewelry once or twice in the past. Should this issue arise on retrial, the trial court should assess the admissibility of such evidence under Rule 404, Ala. R. Evid., and Ex parte Drinkard,777 So.2d 295 (Ala. 2000).
 V.
The appellant further argues that the trial court improperly denied his motion in limine in which he sought to prevent the State from admitting evidence about his prior second-degree theft conviction. (Issue VII in the appellant's brief to this court.) Specifically, he contends that the conviction was too remote because it was more than ten years old and that it was too prejudicial because it was similar to the offenses charged in this case. Should this issue arise on retrial, the trial court should apply Rules 403 and 609, Ala. R. Evid., in determining whether evidence about any of the appellant's prior convictions is admissible. Rule 403, Ala. R. Evid., provides:
 "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
Rule 609, Ala. R. Evid., provides:
 "(a) General rule. For the purpose of attacking the credibility of a witness,
 "(1)(A) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and
 "(1)(B) evidence that an accused has been convicted of such crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and
 "(2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.
 "(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction
or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction, more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."
(Emphasis added.)
Although we are reluctant to reverse the appellant's convictions, we do not believe the convictions would withstand the many levels of judicial scrutiny that occur when a defendant is convicted of a capital offense and sentenced to death. Accordingly, we are compelled to reverse the appellant's convictions and to remand this case to the trial court for proceedings consistent with this opinion.
REVERSED AND REMANDED.
McMILLAN, P.J., concurs; COBB, SHAW, and WISE, JJ., concur specially.
[1] Although the appellant did not specifically argue this issue in his brief to this court, he did state during his oral argument before this court that the instruction was not adequate. *Page 480